MARIA DONKLE, plaintiff in error *vs.* MORRIS KOHN, defendant in error.

1. Where, during the term at which a case was tried, a consent order was taken giving the losing party thirty days after the final adjournment of Court within which to make a motion for a new trial and file the brief of testimony, which time was subsequently, by another order, passed by the Judge, also by consent, extended to the ...... day of December, and the parties failed to agree to the testimony until the last day of December, and the Judge being then absent from home, the brief, though presented to him, was not approved on that day by him :

*Held*, That it was not error in the Judge, on being satisfied that the delay was not the fault of the movant, subsequently to approve the brief of testimony and permit it to be filed, and grant the rule *nisi* to be heard at the next term of the Court.

2. Where, in the crosses to a set of interrogatories, a witness was asked as to his course during the late war, and whether he had not hired a substitute in the Confederate army, and was further asked whether he believed Jesus Christ to be the Saviour of the world, and the witness refused to answer the questions :

*Held*, That, as there is nothing in the record to show that such questions were pertinent to any matter before the Court, it was error in the Judge to rule out the whole of the witness' answers on the ground that the cross-questions were not answered.

3. When land is sold under a mortgage *fi. fa.* the sheriff cannot put the purchaser in possession by ousting one who is neither the defendant, his tenant, or assignee, or heir, and who holds adversely to the mortgage.

4. A tenant cannot attorn to one who claims adversely to his landlord even to prevent an illegal eviction by the sheriff.

New trial. Landlord and tenant. Before Judge HARVEY. Floyd Superior Court. May, 1871.

This was a proceeding by Kohn against Miss Donkle as his tenant, begun in May, 1870. She denied that she held under him. Plaintiff read in evidence two rent notes by Miss Donkle to Kohn, one made the 15th of January, 1868, and the other on the 15th of April, 1870, and a writing of this last date, by which she acknowledged herself Kohn's tenant of the premises in dispute. On the first note were

receipts for rent made by Printup & Fouche, as Kohn's attorneys. Here plaintiff closed.

Defendant introduced a mortgage of the premises from one McKenzie to Horton & Pikeman, made in February, 1853; a *fi. fa.* based upon it, issued in December, 1867, levied upon the premises, and a deed from the sheriff to Daniel S. Printup, for the premises, under a sheriff's sale under said *fi. fa.*, made in March, 1868. She also put in evidence a conveyance of the premises by D. S. Printup to John Printup, his son, made in May, 1868. The expressed consideration of the sheriff's deed to Printup was $30 00, and of his to his son, $10 00 and natural affection.

D. S. Printup testified that McKenzie was in possession of the premises under bond for titles from Shorter, when he mortgaged them, that the mortgage was foreclosed and the premises were about to be sold. One Myers had the sale enjoined, because he had bought the property at a sheriff's sale, under a *fi. fa.* in favor of Shorter against McKenzie for the purchase-money. This cause went to the Supreme Court. See 25 Georgia Reports, 89. That Court sustained the injunction, but directed the bill to be amended. Nothing was done with the cause till 1867, when Myers' counsel not objecting, Printup took an order in open Court dismissing Myers' bill, and subsequently ordered said sale to proceed. He swore that he gave Kohn notice in January, 1868, that the sheriff was going to sell the premises under said mortgage *fi. fa.;* that he would have bid $500 00 or $600 00, for the property, as the *fi. fa.* was that large, and no other property was subject to it. (The property rented for $15 00 per month.) Further, he said that when the sheriff went to put him in possession of the premises Miss Donkle attorned to him to avoid eviction, upon his agreeing to save her harmless.

Miss Donkle testified that she rented the premises from Kohn, and held under him till she attorned to Printup, when and for the reason aforesaid, she afterwards attorned to Kohn

again, to avoid litigation with him. She also said that in the Summer of 1868 she saw Kohn in Philadelphia, who said she could pay the rent to Printup, and that he did not blame her under the circumstances.

In rebuttal it was shown that in 1863 the property was sold under a *fi. fa.* against Myers, subject to vendor's lien, which was subsequently paid, and the purchaser at that sale sold it to Kohn and put him in possession, and Kohn ever since held possession by his tenants, as aforesaid. The record of the case in 25 Georgia Reports, 89, was put in evidence.

Kohn's counsel offered in evidence Kohn's interrogatories. In them he denied consenting that Miss Donkle should pay Printup rent, and said that Printup only told him there was an old, trifling claim on the land, which he, Printup, who was then his attorney, would see did no damage.

The cross-interrogatories asked Kohn if, since the war, he had not sworn that he had ever been loyal to the United States, and collected a claim against the United States, and yet, during the war, did aid the Confederate States in various specified ways, he then living South; and if he believed in the divinity of Jesus Christ. He refused to answer any of these questions, saying they had nothing to do with the case. Because these questions were not answered, the Court would not allow his testimony to be read. The other evidence was *pro* and *con.*, attacking Printup's conduct and supporting it, but it is not material here.

Kohn's counsel requested the Court to charge the jury substantially, that if Miss Donkle held under Kohn, she could not avoid paying rent to him by attorning to Printup; that if Kohn had held the property adversely to said mortgage for four years before the sale, under it the sale was void; that a sheriff could remove no one from possession of land sold by him at sheriff's sale, except the defendant in *fi. fa.*, or persons holding under the defendant. He refused so to charge, but charged substantially, that the question was not to whom the land belonged, but whether Miss Donkle owed

Donkle *vs.* Kohn.

Kohn rent for it; that if Kohn had consented to her attornment to Printup, he could not recover; that the Statute of Limitations did not run against the mortgage *fi. fa.* so long as it was enjoined; if the decision of the Supreme Court was complied with by amending the bill, etc., and then Kohn's feoffer bought at sheriff's sale pursuant to that decision, Kohn's title was perfect, and he could recover, unless he consented for Miss Donkle to pay Printup, but if the first sheriff's sale was never set aside, Kohn's feoffer bought subject to said mortgage. The jury found for the defendant. By consent, an order was taken that plaintiff might have till thirty days from the final adjournment of the Court, to make up the brief of evidence and motion for new trial, and that the motion might be heard in vacation, etc. This was in November, 1870. In December, 1871, Judge Harvey had succeeded Judge Kirby, before whom the case was tried, and he granted plaintiff further time, till December, 1870, and then the Judge, because he was absent in December, ordered Printup to show cause why the new trial should not be granted on the 3d of February, 1871. Kohn's counsel sought to account for the long delay by affidavits as to the absence of himself and the Judge, and as to Printup's consent to take no advantage of the delay. To these Printup replied by denying any such consent. Whatever of consents were made *seem* to have been made before the Judge, when the motion was to have been heard, but for a postponement then had. When the Court adjourned does not appear, but it was more than thirty days after the final adjournment of the Court before the motion was filed and a brief of evidence made out. The grounds for a new trial were, that the verdict was contrary to the evidence, etc., and that the Court erred in ruling out Kohn's testimony, in refusing to charge as requested, and in charging as he did. The cause came on for hearing in May, 1871. Printup moved to dismiss it, because the motion and brief had not been filed in time. The Court refused to dismiss the motion, and upon hearing evi-

Donkle *vs.* Kohn.

dence as to what the testimony had been on the trial, approved the brief of evidence, and ordered it then filed, and after argument he granted a new trial.   His refusal to dismiss the motion, and his grant of a new trial are assigned as error.

PRINTUP & FOUCHE; UNDERWOOD & ROWELL, for plaintiff in error.

DUNLAP SCOTT, for defendant.

McCAY, Judge.

1. It would, as we think, be improper for this Court to interfere with the action of the Judge, in his direction of this case, during the vacation, and in his granting the rule *nisi* under the circumstances as set forth in the record.   The whole matter was a question of good faith and diligence on the part of the counsel for the movant.   The affidavits are painfully conflicting, and the Judge had special means to assist him in arriving at his conclusion, which this Court has not, since much of what did occur, was under his own observation.   It was necessary that the brief of testimony should be approved, before the rule *nisi* was granted, and the brief filed; and if the Judge was satisfied, as he doubtless was, that it was not the fault of the movant that it was not sooner approved, we see no error of *law* in his granting the rule *nisi*, and permitting the brief to be filed.   No delay of the cause was produced.   The rule *nisi* would, perhaps, have been made returnable to the next term at any rate; and as this was the course the case took, we will not interfere.   See *Goodwin vs. Hightower*, 30 Georgia, 249.

2. What the course of this witness, during the war, had to do with this case, we cannot see.   Nothing was stated to make these questions pertinent.   All that appears would, at least, be a mere act, and we know of no rule which could make any probable answer to them pertinent.   Nor do we

Donkle *vs.* Kohn.

think that clause of the Code, which declares that religious belief shall go *only* to the credit of a witness, justifies the question asked, as to the witness' belief in Christ as the Saviour. The section of the Code, 3797, simply intends that the religious belief which made a witness incompetent at common law, shall, in Georgia, go only to the credit of the witness. Has it ever, at least in modern times, been contended that a Jew was incompetent? That a want of belief in Jesus, as the Saviour, was a ground for the exclusion of a witness? We think not. A belief in a God, and in a future state of rewards and punishments, has, by some Courts, been held necessary to render a witness competent. But a Jew is competent at common law.

3. Our statute, Code, section 3601, expressly provides that the sheriff shall not, to put a purchaser of land at a sheriff's sale in possession, turn out anybody but the defendant, his heirs, or his tenant or assignee, since the judgment. Was Khon either of the class here alluded to? *He* held by virtue of a sheriff's sale, before the judgment on the mortgage, and in no fair sense can he be said to hold as the assignee of McKenzie at all. The sale at which Morris bought, was a sale, whether legally or not, of all McKenzie's right, and the purchasers were clearly holding adversely to the mortgage. Had the mortgagor taken a decree in the equity cause against Morris, perhaps Khon might be so bound by that decree, as that he could have been turned out to put in a purchaser under the decree. But this was not done. The sale was simply by virtue of the mortgage, and Kohn held adversely to that. Whether his title was good against the mortgage, is another question. It was not in the power of the sheriff to oust him by the mere sale. The sheriff can only turn out the defendant, and those who are privies to the judgment. We do not go into the questions made upon the sale under the mortgage *fi. fa.* Admitting that sale to be a good one, admitting that Printup stood in such a situation towards Kohn, as to free that sale from the objections made to it—

we do not think the sheriff was authorized to turn Kohn out by virtue of it.

4. That a tenant cannot attorn to one holding title adversely to his landlord, will not be doubted. This is clearly the common law, and is affirmed in our Code. We do not see that the case is helped any by the fact that the adverse claimant comes with the sheriff at his heels. A sheriff may be a trespasser, as well as a private person, and the law gives a remedy against him as well as against private persons. We do not go into the evidence. There was some evidence that the attornment to Printup was with Kohn's consent, and did the case turn wholly on that, we are not sure but that the verdict of the jury is sustainable under the evidence. But, in the view we take of the case, we do not think the law was put fairly to the jury on the other points, and we affirm the judgment granting a new trial.

Judgment affirmed.