GREEN *vs.* THE STATE OF GEORGIA.

71 487
95 456

1. A Chinaman having been offered as a witness, and in answer to questions propounded to him to test his competency, having answered, in effect, that he believed in God and in the Bible, and was conscious of the penalties incurred for false swearing both in this world and the next, he could be sworn in the usual form on the Evangelists, and admitted to testify.

2. The enforcement of order and proper decorum are matters which must be left largely to the discretion of the judge, and except where flagrant injustice is made apparent, a refusal to check the remarks of counsel will not require a reversal.

3. The evidence is for the jury, and it is not for the judge to draw inferences and conclusions from it for them; nor should he select certain facts favorable to the defendant in a criminal case, and charge that no inference as to defendant's guilt could be drawn from such evidence.

4. The charge as to the conclusiveness and tendency of circumstantial evidence in fixing guilt, when taken with the context, was correct, clear and accurate.

5. One ground of a motion for new trial being that the foreman of the jury separated from his fellows and conversed with the sheriff, when it appeared that the juryman was never out of sight of the bailiff in charge, that he came from the jury room and asked a question of the sheriff, who at once ordered him back to the room and referred him to the court for an answer; such irregularity was not sufficient to require a new trial.

6. On the trial of a burglary case, the jury having, in open court and in the presence of the prisoner, made inquiry concerning their power to recommend to mercy, it was not error to inform them that, while it was in their power to recommend to mercy, the judge was not bound by such a recommendation, and that it was entirely discretionary with him whether he regarded it in fixing the punishment or not.

7. Although this court, if placed in the position of the jury, might have returned a different verdict, yet there being sufficient evidence to sustain their finding, and the presiding judge being satisfied therewith, it will not be reversed.

December 4, 1883.

Criminal Law. Witness. Evidence. Attorney and Client. Practice in Superior Court. Charge of Court. Before Judge RONEY. Richmond Superior Court. April Term, 1883.

Tom Green was indicted for burglary. On the trial, the evidence for the state showed, in brief, as follows: About half past nine o'clock, on the night of April 11, 1883, one Bredenburg went through a bar-room in the city of Augusta to a water-closet in the rear. Next to this lot, and separated from it by a brick wall, was a store kept by a Chinaman named Dorsey Lee, and beyond that was a negro eating-house or "cook-shop," with sleeping apartments separated by plank partitions, like the state-rooms of a steamboat. While Bredenburg was in the rear of the bar, he heard some one open the back door of Dorsey Lee's store, run across the back yard, and jump over the fence into the yard of the eating-house. He at once informed Dorsey Lee, who was in the bar; they went to his store, and found that a panel of the front door had been broken open with an axe, and a burglar had entered and stolen eighty-five cents, which was all the cash that had been left there. Bredenburg at once went down and watched the front of the eating-house, and summoned the police. When the policeman arrived, Bredenburg went to the court house, and summoned the officer on duty. After searching around the house, Bredenburg remained outside to keep watch, while the police searched the house. They found one of the bed-rooms fastened, but drew the latch with a knife, and found the defendant in bed with his clothes on, perspiring freely and covered with bed clothes from head to foot. On being uncovered, he at once protested that he "didn't do it;" that he heard a man run into the next room and whisper to a man in there that, if he did that, he had better get out. There were several others in the house, and one other person in bed, but he was undressed, and was shown to have retired some time previously, and

showed no signs of recent exertion. Some of the persons present testified that the defendant engaged his sleeping room about half-past eight o'clock and took the key to it, and that he came in and went to bed about twenty or twenty-five minutes before the search, but that he came in at the front door.

The evidence for the defendant was to the effect that he had a claim on the United States government for a pension, and that he came to Augusta from South Carolina on business connected with its collection; that he ate supper about six o'clock, at another eating-house just across the street from that in which he was arrested, and that he was referred to that place for a sleeping room.

There was other testimony touching a prosecution in South Carolina against defendant, not material here.

The jury found the defendant guilty, and recommended him to mercy. He moved for a new trial, on the following among other grounds:

(1.) Because the court allowed Dorsey Lee, a Chinaman, without being sworn, to give evidence in favor of his own competency as a witness, and held the witness competent, and allowed him to be sworn in the usual manner on the Bible.—The counsel for defendant objected to the preliminary examination, on the ground that the witness could not show his own competency by an examination not under oath, and that the oath administered was not a legal oath for him. [The preliminary examination of the witness was as follows:

QUESTION. What religious faith have you got?

ANSWER. I believe the God of my religion. ·

Q. Do you believe in the Bible?

· A. I believe the Bible, and believe the God of my religion.

Q. Do you know the binding effects of an oath; do you know the effect of your swearing to a lie?

A. Man tell lies go to the bad place; go to devil; can't go to heaven, if tell lies.

A. Do they have courts in China?

Q. We never go to any China court; we all keep quiet and respectable people. I never make no fuss with anybody.

Q. Did you ever go in any China court?

A. No; I attended to my own business.

Q. Do they have a court in China?

A. Yes, they have court in every country.

Q. How do they swear a witness?

A. By this hand, the right hand (holding it up).

Q. What do they say?

A. I don't think there is any matter of difference, except a few little differences.

Q. What is the oath in China?

A. I forget; I can't give it all, I no think I can remember much; I can't make it out.]

(2.) Because the solicitor general, in his concluding argument, was allowed by the court frequently to refer to the defendant as "this ex-United States soldier," defendant's counsel objecting to such references, as contravening the rules of court, and the court stating that in his judgment the solicitor general was only fairly replying to so much of the argument of defendant's counsel as relied on lack of motive in defendant. Also because in the same argument the solicitor general said to the jury, "I tell you, when you find a man with a United States pension, or having anything to do with the United States government, it is *prima facie* presumption against him;" and the court refused defendant's counsel an opportunity to reply to this part of the argument. [The court certified as follows: "The solicitor general was allowed, in his concluding argument, to comment on the fact that defendant was an ex-United States soldier, because the court understood that the same was brought out either in the evidence or in argument of defendant's counsel, and the solicitor general was only replying to the argument of the defendant's counsel. The court, upon objection made by defendant's counsel, distinctly ruled, in presence of the jury, that it was improper for the solicitor general to disparage any branch of the United States government."]

(3.) Because the court refused to charge as follows: "If you find from the evidence that defendant was found shortly after the crime locked up in a room, covered up in

bed in a lodging-house, and you find further, that defendant had hired this room and paid for it, having been directed there when in search of a lodging, no inference or conclusion as to his guilt can be drawn from such evidence. Any person has a right to hire a room in a lodging-house, and lock the door thereof, and lie on the bed therein, covered or not, as he may see fit."

(4.) Because the court charged as follows : "In order to convict on circumstantial evidence, it must connect the defendant to a moral and reasonable certainty with the criminal act, and exclude every other reasonable hypothesis but that of the guilt of the accused. But circumstances satisfactorily proved which point to his guilt, and which are irreconcilable with his innocence, or which require explanation from him, and may be explained if he be innocent, but which are not explained, ought to satisfy the conscience of every juror in rendering a verdict of guilty."

(5.) Because the court charged as follows : "It is not for the court to say what are the circumstances connecting the defendant with this crime. That is a question of evidence. I reiterate that, in order to convict on circumstantial evidence, you must be satisfied that all of the circumstances that have been proved point to the guilt of the defendant, and are irreconcilable with his innocence. If, after weighing the testimony, you are satisfied that it points with reasonable and moral certainty to the guilt of the accused, I charge you, that it is your duty, under the oath you have taken, to render a verdict of guilty. But if, on the contrary, after examining the circumstances proved to you, you are not satisfied, acquit him. The facts are for you to determine. If the facts are sufficiently proved, and if they point unerringly and with certainty to the guilt of the accused, they are as strong as positive testimony. If, after examining all the circumstances proved to you—the court not undertaking to state what the circumstances are —you are satisfied from the evidence that they point with

v 71-32

moral and reasonable certainty to the guilt of the accused, and not that of any one else, it is your duty to render a verdict of guilty."

(6.) Because, pending the consideration of the case, the foreman of the jury separated from his fellows and conversed with the sheriff, and the jury then came out and asked the court if they could find a verdict of guilty with a recommendation to mercy, and, on receiving an affirmative reply, almost immediately returned a verdict to that effect. [The affidavits used on the hearing of the motion for new trial showed that the foreman, on one occasion, when the sheriff was sent to the court to ask if the jury were likely to agree, asked the sheriff if the jury could recommend to mercy that he was not out of sight of the bailiff in charge, and only a slight distance from his fellows; that the sheriff told him that he must ask information of the judge; that it would be improper for him to converse with the jury; that the jury then came out, and asked the question regularly of the court, and on receiving an affirmative answer, retired and returned a verdict of guilty, with a recommendation to mercy. The instructions of the court on this subject were as follows: "I know nothing to prevent you from doing that. Of course the court takes such cognizance of that as proper. Still, you must first be satisfied from the evidence that a party is guilty before you can convict."]

The motion was overruled, and defendant excepted.

SALEM DUTCHER; F. W. CAPERS, JR., for plaintiff in error.

BOYKIN WRIGHT, solicitor general, for the state.

HALL, Justice.

1. The prosecutor was a Chinaman, who had been in this country about three years, spoke the English language imperfectly, and was not easily understood, except by those familiar with him. When offered as a witness by the state,

he was objected to, and it was insisted that a peculiar form of oath should be administered to him; that his competency could not be shown by his own examination not under oath, but had to be established *aliunde*. The court, however, tested his capacity by causing him to be questioned; the result of which was, that he believed in God, and in the Bible, and showed a consciousness of the penalties incurred for false swearing, both in this world and the next. After this appeared, he was sworn in the usual form on the Evangelists, and admitted to testify. This was in strict accordance with legal requirements. Code, §§3852, 3853, 3856, 3859, 3860.

2. Objection was taken to the course of remark indulged in by the solicitor general, and the court was asked to intervene and check it. The judge complied in part with this request, but a portion of the remarks he thought legitimate as a reply to topics discussed by defendant's counsel. From aught that appears in the record, we cannot say there was any error, or even the least impropriety in this. The enforcement of order and proper decorum are matters which must necessarily be left, in a very large measure, to the discretion of the judge, and it is hardly proper in any instance, except where flagrant injustice is made manifest by the course of the court, to assign error thereon.

3. It would have been manifestly wrong to have charged the jury, as requested by defendant's counsel, that, if they found from the evidence, that defendant was found shortly after the crime locked up in a room, in bed, covered up, in a lodging-house; that defendant had hired the room and paid for it, having been directed there when in search of a lodging; that no inference or conclusion as to his guilt can be drawn from such evidence. Any person has a right to hire a room in a lodging-house, and lock the door thereof, and lie in the bed therein, covered or not, as he may see fit." This request contained but a partial summing up of the circumstances detailed in the evidence; it

alluded only to such as were deemed favorable to the defendant, while all allusion to others which had a tendency to inculpate him seems to have been carefully excluded. The evidence is for the jury, and it is not for the judge to draw inferences and conclusions from it for them. Had he undertaken to do so, he would have invaded their peculiar province, and assumed a prerogative that did not belong to his office.

4. The portion of the charge excepted to as to the conclusive nature and tendency of circumstantial evidence to fix guilt, when taken in connection with the context, is undoubtedly correct. Indeed, it is not only clear and explicit, but it is liberal to the defendant, and presents ably every phase and theory of the case; in these respects it is a model.

5. It is satisfactorily shown that the prisoner suffered no detriment from the separation of the foreman of the jury from his fellows and in his conversing with the sheriff. He was never out of sight of the bailiff who had charge of the jury; and when he approached the sheriff and made known his want, that officer promptly ordered him back to his room, and referred him to the court for answer to his questions. This irregularity was too slight to warrant an interference with the verdict. The conduct of the sheriff was eminently proper.

6. The court did not err in informing the jury that, while it was in their power to recommend the defendant to mercy, the judge was not bound by such a recommendation, and it was entirely discretionary with him whether he regarded it in fixing the punishment. This was all done in response to a question by the body in open court, and in the presence of the prisoner. We cannot perceive that it had a tendency to force a verdict from the jury who had been more than five hours deliberating upon the case.

7. The question that has given us most trouble, is the sufficiency of the proof to connect the prisoner with the offence. Had we been on the jury, we might have reached

a different conclusion, but it is not our province to put ourselves in their position. They were satisfied beyond a reasonable doubt of the defendant's guilt, and the judge who presided at the trial was content to let the finding stand; he had a discretion in this respect which is not confided to us, and we cannot say that he has abused it. The facts in proof render the guilt of the accused highly probable, and perhaps his failure to explain such of them as raised a strong presumption against him, and which, upon the supposition of his innocence, might easily have been explained, serve to render conclusive what might otherwise have appeared indifferent and inconclusive. At all events, the rule which forbids our interference in such cases, has been too long and too firmly established by our decisions, to be overturned or materially changed.

Judgment affirmed.