## 3363. TWILLEY *v.* THE STATE.

1. The evidence authorized the verdict.
2. Where the fact of guilt depends entirely upon circumstantial evidence, it is obligatory upon the trial judge, even in the absence of a timely written request, to charge the jury upon the law as to the force and effect of circumstantial evidence in criminal cases.

DECIDED JUNE 7, 1911.

Indictment for gaming; from city court of Sparta—Judge Moore. March 14, 1911.

*T. M. Hunt, R. H. Lewis,* for plaintiff in error.

*R. L. Merritt, solicitor,* contra.

HILL, C. J. The accused was indicted with three others for the offense of gaming, the indictment charging that they "did play and bet for money and drinks of liquor, a thing of value, at a game played with cards, contrary to the laws of said State, the good order, peace, and dignity thereof." Following his conviction the defendant filed his motion for a new trial, based on the general grounds and on the special assignment that the court failed to charge the jury upon the law as to the effect of circumstantial evidence.

1. The evidence, substantially stated, is as follows: The accused and three others named in the indictment were caught by the marshal of the town of Sparta while playing a game of cards on the "headboard of a grave in the Catholic cemetery." Neither money nor whisky was seen, but the marshal testified that he "smelt whisky strong," and an empty bottle was lying on the ground, and two of the players were apparently under the influence of whisky. After they had been caught and arrested, two of the players, not the accused, stated that they were "just playing for drinks," and the marshal and another witness testified that "a drink of whisky was a thing of great value in Hancock county." This statement of the other defendants, made after the arrest and after the completion of the offense (if any offense was committed), had no probative value as against the accused. The only evidence against the accused, except the circumstance that he was playing with the others, was the statement made by him, some time after the arrest, to the mayor, that he would like the mayor, as his friend, to have the thing "squashed," and that on the day when they were caught playing, one of the players came by his shop, stated to him that he had a bottle of

whisky, and proposed that they go to the Catholic cemetery and play cards for drinks. This statement, while not amounting to a confession, was incriminatory, and, considered in connection with the other strongly suspicious circumstances, may be regarded as of sufficient probative weight to show the corpus delicti, and that the accused was a particeps criminis.

We can not say, as a matter of law, that the circumstances were not sufficient for that purpose. For four men to leave their business in the daytime and go to a cemetery and play cards on the headboard of a grave would seem to indicate that there was something more in the way of temptation than the mere pleasure of playing an innocent game of cards, and in view of the indicia of the presence of intoxicants, and the evidence ·that a beverage of this character was hard to get in Hancock county and was very valuable, it would seem to be not unreasonable to infer that the "drinks" furnished the inducement for the playing of the game, and it is difficult to believe, in view of the evidence as to the great value of whisky in Hancock county, that·. the generosity of one of the players would have furnished without price the tempting stake. It is so natural for men who play cards, and for those who drink, to play for drinks, that this court is constrained to the conclusion that the verdict of the jury was not wholly unauthorized. Apparently the law against gaming, as well as against the sale of liquor, is most vigorously enforced in Hancock county, and in the town of Sparta, when the citizens of the town are compelled to resort to a cemetery to play cards for drinks, and when, even in that secluded spot, they don't have a ghost of a chance.

2. The evidence, however, was entirely circumstantial. Even the incriminatory statement only inferentially indicates guilt. In such case it is well settled, by the repeated rulings of the Supreme Court, that it is the duty of the trial judge, even in the absence of a request, to charge the jury the law defining the probative value of circumstantial evidence, as laid down in section 1010 of the Penal Code (1910). The writer confesses his inability to see any practical difference between the universal rule of "reasonable doubt," applicable in all criminal cases, and the special rule of "reasonable hypothesis," applicable to cases of circumstantial ·evidence. Whether dependent upon direct or circumstantial evidence, a conviction is unauthorized unless the jury believe that guilt is

proved beyond a reasonable doubt; and so long as there is a reasonable hypothesis of innocence, a reasonable doubt of guilt exists. And where a jury is instructed that a verdict of guilty can not be legally found unless the evidence proves guilt beyond a reasonable doubt, this would seem to be tantamount to telling the jury that they could not legally convict unless the evidence excluded "every other reasonable hypothesis save that of the guilt of the accused." But the law has made a difference between "reasonable doubt" and "reasonable hypothesis," and the Supreme Court has many times declared that, when a conviction is based alone on circumstantial evidence, it is reversible error for the trial judge to fail to instruct the jury that the evidence must exclude every reasonable hypothesis save that of guilt, although he has clearly charged that a conviction would be unauthorized unless the evidence proved the guilt of the accused beyond a reasonable doubt.

*Judgment reversed.*