## 3628.　BERRY *v.* THE STATE.

1. The fact that the declarant is a girl of tender years may be taken into consideration in determining whether, under the res gestæ rule, her declarations are so free from the suspicion of device or afterthought as to be admissible in evidence.
2. The competency of the witness whose testimony was objected to was sufficiently evident. The evidence amply warranted the verdict, and none of the grounds of the motion for a new trial present any reason authorizing a reversal of the judgment.

DECIDED OCTOBER 23, 1911.

Conviction of involuntary manslaughter; from Madison superior court—Judge Meadow. June 9, 1911.

Berry was convicted of involuntary manslaughter in the commission of an unlawful act. He admitted that he shot and killed the deceased, Velma Eberhart, a child not quite 3 years old, but contended it was an accident. The only eye-witness to the shooting was Lillian Lee, a girl 12 years old, who testified for the State: According to her testimony the defendant came into the room where she and the deceased and another baby were. The deceased was standing by the fireplace. The defendant said to her, "Come here, Vel." The child replied, "I am not going to do it." The defendant had a breech-loading gun in his hand, which he had just got-

ten from behind the bed, and was standing in the doorway. When the child refused to come to him, he placed a shell in the gun, said, "Old lady is going to lay her body cold," took deliberate aim, and emptied the entire load of shot in the child's head. In his statement the defendant said that he did not know the gun was loaded; that after he picked up the gun, and while he was looking at it, the hammer slipped out of his hand, and the child was accidentally killed.

*John E. Gordon, J. F. L. Bond,* for plaintiff in error.

*Thomas J. Brown, solicitor-general,* contra.

RUSSELL, J. 1. At the time of the fatality, the deceased child's grandfather was on the front porch, and on hearing the gunshot ran into the house. He was allowed, over objection of the defendant's counsel, to relate the entire conversation, both as to what was said by the defendant and what was said by Lillian Lee, the only other eye-witness. It is contended that the sayings of Lillian Lee were inadmissible, because hearsay. We think the conversation was admissible as a part of the res gestæ. Declarations of third persons or bystanders, when so connected with the main fact as to be free from the suspicion of device or afterthought, are admitted under this rule. The age of the declarant is a circumstance entitled to some consideration in determining whether sufficient time has elapsed for the return of deliberate reason, so as to change the nature of the declarations from verbal acts to inadmissible hearsay. When the grandfather ran into the room he asked Lillian Lee what was the matter. She replied, "Henry Berry has shot Velma." She then detailed the tragedy to her grandfather identically as she did on the witness stand the day of the trial. That Berry did shoot Velma is undisputed. The only dispute is as to the manner in which the shooting took place. A child so young, in the presence of such a tragedy, with the excitement which such an occurrence would naturally produce on her mind, could not do any after-thinking in such a brief period of time. Her declarations were spontaneous and almost involuntary acts, just as much so as would be an exclamation of pain if her hand had come in contact with a red-hot iron. This being so, the fundamental requirement of the res gestæ rule was complied with. *Mitchum* v. *State,* 11 *Ga.* 615; *Flanegan* v. *State,* 64 *Ga.* 52.

2. The competency of the witness Lillian Lee was challenged by

the defendant, on the ground that she did not have sufficient intelligence to appreciate the sanctity of an oath and did not know right from wrong. It appears that she was 12 years old. She testified that she knew right from wrong, that she knew she ought to do right, and that it was wrong to tell a lie and right to tell the truth. On being asked where she would go after death if she failed to do right, she said she did not know; and stress is laid on this. We are fully convinced that the answer of the child does not make her incompetent as a witness. She could hardly be expected to give a categorical answer to a question which has been, from time immemorial, and which still is, puzzling some of the wisest men of all times. Children sometimes display great wisdom both in answering and asking questions. The writer of this opinion recently read of one of the greatest preachers of the present age relating a conversation which was said to have taken place between him and a little girl of the same age as this witness. The child said to him, "Does God want everybody to do right?" and, on receiving an affirmative reply from the preacher, she continued, "Does the devil want everybody to do wrong?" To this question also the preacher replied in the affirmative. The child then said, "Can God do anything He wants to do?" The preacher was a firm believer in the omnipotence of the Almighty, and was therefore forced to answer again in the affirmative. Whereupon the child continued the catechism by asking, "Then why doesn't God destroy the devil?" The preacher answered the question somewhat evasively by telling the child to "run along now and play." There are some things which must be accepted on faith, and about which all of us do not yet know. The witness was not asked as to her belief, but as to her knowledge. But, however that may be, we are of the opinion that she showed sufficient intelligence, and sufficient appreciation of the sanctity of an oath, and of the difference between right and wrong, to permit her testimony to go before the jury.

The tragedy was without excuse, and the defendant is not legally blameless. The trial was free from error, and the judgment of the lower court is                                        *Affirmed.*