## 6905. GANTZ *v.* THE STATE.

1. Where the evidence relied upon to connect the defendant on trial with the perpetration of the crime is entirely circumstantial, it is error, requiring the grant of a new trial, for the judge to omit to charge upon the law of circumstantial evidence, though not requested so to charge.
2. There is no statute in this State that renders a witness incompetent to testify because of his religious belief or the lack of it, and the true test of his competency in this respect is his apparent understanding of the nature and obligation of an oath and of the legal consequences following its violation.

DECIDED MAY 24, 1916.

Indictment for larceny; from Richmond superior court—Judge H. C. Hammond. August 14, 1915.

*T. S. Lyons, J. S. Watkins,* for plaintiff in error.

*A. L. Franklin, solicitor-general, John M. Graham,* contra.

RUSSELL, C. J. A diamond-ring, the property of Lamback, was stolen from his dwelling-house, and a detective found it at the store of a Chinaman, who testified that the defendant and another negro gave him the ring to sell,—that he got it from the two of them together; though elsewhere he testified that the other negro was the one from whom he got it when they came to his store together. The defendant denied that he knew anything about the ring; and if the jury believed that his statement was false, they were authorized to consider the falsity of the statement as a circumstance pointing to his guilt. An additional circumstance was the defendant's attempt to run away, when he saw the detective. *Grant* v. *State,* 122 *Ga.* 740 (1, 2), 741 (50 S. E. 946) ; *Jones* v. *State,* 105 *Ga.* 649 (31 S. E. 574). Since there was no attempt to explain the defendant's possession of the ring jointly with another, if the jury saw proper to believe the Chinaman's testimony and found that the stolen ring was, constructively at least, in the defendant's possession, the jury would have perhaps been authorized to convict the accused, if the trial had been free from error. But the case is close upon its facts, and the guilt of the accused, if he be guilty, depends entirely upon circumstantial evidence. In such a case the trial judge should specifically call the attention of the jury to the rule that to warrant a conviction on circumstantial evidence, the proved facts must not only be consistent with the hypothesis of guilt, but must exclude every other reasonable hypothesis than that of the guilt of the accused (Penal Code,

§ 1010). The failure of the judge to do so in this case is excepted to in the motion for a new trial.

When the guilt of one accused of crime is wholly dependent on direct evidence, the rule laid down in section 1010 of the Penal Code, supra, has no application and should not be given to the jury; and when the proof of guilt rests partly on direct evidence and partly upon proof of circumstances which by their consistency sustain the hypothesis of the defendant's guilt, an appropriate request is necessary, to require an instruction upon the weight to be attached to the circumstantial evidence. *Middleton* v. *State, 7 Ga. App.* 1 (66 S. E. 22). Where, however, as in the present case, the hypothesis of the defendant's guilt rests wholly upon proof of various circumstances, each of which merely points in that direction, it is the duty of the trial judge, even without a request, to instruct the jury that if the proved facts are consistent with the innocence of the defendant, he is entitled to an acquittal. This rule is embodied in the code in recognition of the fact that the tendency to act upon mere suspicion is one of the most common frailties of humankind; and, as a consequence, the law deems it necessary in a criminal case, where the guilt or innocence of a citizen is to be ascertained by the construction which may be given to circumstances indicating his guilt, and from inferences drawn from facts which only indirectly point thereto, to require that the jury be given a warning against yielding to the well-nigh universal tendency to which we have referred. The language of the code section is so sweeping and exhaustive as to indicate the importance of the mandate. The omission to warn the jury against the danger of acting on suspicion, by failing to give the substance of section 1010 of the Penal Code, has uniformly been held to be an error so presumptively prejudicial as to require the granting of a new trial, where the conviction rests exclusively on circumstantial evidence. *Riley* v. *State,* 1 *Ga. App.* 651 (57 S. E. 1031); *Middleton* v. *State,* supra; *Thomas* v. *State,* 8 *Ga. App.* 95 (68 S. E. 522); *Harvey* v. *State,* 8 *Ga. App.* 660 (70 S. E. 141); *Twilley* v. *State,* 9 *Ga. App.* 435 (71 S. E. 587); *Hays* v. *State,* 10 *Ga. App.* 823 (74 S. E. 314); *Bailey* v. *State,* 10 *Ga. App.* 829 (74 S. E. 285); *Lindsey* v. *State,* 15 *Ga. App.* 13 (82 S. E. 378); *Weaver* v. *State,* 135 *Ga.* 317 (69 S. E. 488); *Hamilton* v. *State,* 96 *Ga.* 301 (22 S. E. 528).

There are various other assignments of error, but we do not deem any of them to be of sufficient merit to require the grant of a new trial.

2. The trial judge is the trior in the first instance as to the competency of witnesses when the competency of a witness is attacked, and it can not be said that the court erred in adjudging the Chinaman to be competent as a witness, merely because he testified that he did not know where he would go when he died and was not a Christian. The fact that, in support of the prima facie showing of his competency, he testified that he would go to the penitentiary if he swore a lie shows that he knew that if he testified falsely he would violate the law. The sufficiency of the test as to the competency of a witness is necessarily largely a matter of judicial discretion. It is true that in *Green* v. *State,* 71 *Ga.* 487, the Chinaman, who was offered as a witness answered that he believed in God and in the Bible and was conscious of the penalties of false swearing, both in this world and in the next; but in *Young* v. *State,* 122 *Ga.* 726 (50 S. E. 996), Chief Justice Simmons, in our opinion, stated the true test as prescribed by the code, when, in ruling upon the competency of a child, he declared that "it is not so much the intelligence of a child that renders it competent to testify, as it is its knowledge of the nature of an oath." Our law does not require more than that a witness shall understand the nature of the obligation of an oath and the legal consequences which should follow its violation. In our view it is not essential to the competency of a witness that he shall know where he will go after death. Although lack of faith on this subject might affect his credit with the jury, it would not disqualify him from being a witness. As was said in *Berry* v. *State,* 9 *Ga. App.* 868-870 (72 S. E. 433), in passing upon the competency of a girl twelve years old to testify, when she said she did not know where she would go after death if she failed to do right we said: "She could hardly be expected to give a categorical answer to a question which has been, from time immemorial, and which still is, puzzling some of the wisest men of all times." There is no statute of this State that renders a witness incompetent to testify because of religious belief or the lack of it; such a test would be inconsistent with our law and with the spirit of our institutions. Traces of the common-law practice (which applied a religious test) are oc-

casionally seen in the habit of asking children of tender years questions as to their religious training, when they are introduced as witnesses, but the Supreme Court of this State has held that "a want of belief in Jesus, as the Saviour" does not render a witness incompetent. *Donkle* v. *Kohn*, 44 *Ga.* 271. The witness under consideration in the present case did believe in a religion of his own country, the name of which he gave in response to a question of the judge, and his answer apparently was satisfactory to the judge, who thereupon pronounced him competent. It is only in a clear case that the reviewing court will interfere with the discretion of the trial judge in determining as to the understanding of a witness as to the nature and obligation of an oath; and there was in this case no abuse of that discretion. A ruling excluding the testimony of this witness would apply a test that would prevent a very large proportion of the people of this country, including many of our most honored statesmen and judges, from exercising the right to testify.

3. The objection made to that part of the testimony by which the solicitor-general sought to impeach the witness introduced by him, as stated in the second ground of the amendment to the motion for a new trial, was that it was "hearsay evidence tending to put defendant's character in evidence." It was not objected that the solicitor-general did not have the right to impeach the witness; and if he did have that right, it made no difference that it was hearsay.

Except for the failure to instruct the jury as to the force and effect of circumstantial evidence, the trial seems to have been free from error, but, for the reasons stated, this omission requires a reversal of the judgment refusing a new trial.

*Judgment reversed.*