## 243.  RILEY *v.* THE STATE.

1. In a criminal case in which the guilt of the defendant is dependent wholly on circumstantial evidence the jury should be instructed that if the proved facts are consistent with innocence, the defendant is entitled to an acquittal.

2. An allegation of ownership in A. B. as to two gallons of whisky is not sustained by proof that four gallons of whisky, contained in two two-gallon jugs, had been purchased jointly by A. B. and two others, and was in the custody of C. D. and A. B. at the time of the larceny, in the absence of any proof that there had been a division of the whisky, and in the absence of any evidence by which one of the two-gallon jugs could be identified or distinguished from the other.

3. Proof of an inculpatory admission will not authorize a charge upon the subject of confession. "There is a very wide distinction between admitting the main fact and admitting some minor or subordinate fact or series of facts which could be true whether the main fact

existed or not." A confession is a voluntary admission of *guilt;* an admission, as applied to criminal cases, is the avowal of a fact or of circumstances from which guilt *may* be inferred, but only *tending* to prove the offense charged and not amounting to a confession of guilt.

Indictment for larceny, from Douglas superior court—Judge Wright. January 12, 1907.

Argued March 20,—Decided April 25, 1907.

*W. A. James,* for plaintiff in error.

*W. K. Fielder, solicitor-general,* contra.

RUSSELL, J. The defendant was convicted of the offense of simple larceny, and excepts to the overruling of his motion for new trial. It appears, from the evidence, that Marion Miller and Bud McCoy went to Atlanta, and that they returned to Douglasville with four gallons of whisky, contained in two two-gallon jugs. One gallon belonged to Bud McCoy, two gallons to Marion Miller, and one gallon to Marion's mother; but there had been no division, nor does the evidence disclose any marks of identification by which the jugs could be distinguished or separated, so as to show which jug, or that either particular jug, contained Marion Miller's whisky. It seems that the arrival of these four gallons of whisky created quite an excitement among a certain class of Douglasville's citizenry, and Miller and McCoy took turns in watching the wagon and guarding against anticipated predatory attacks from the anxiously thirsty who watched their treasure with eager eyes. Their wagon was stopped at a restaurant just above the court-house, and Miller went into the restaurant and ate his supper, while McCoy watched the whisky until he returned; then McCoy went to supper, and Miller watched while he ate. While McCoy was eating and Miller was watching the wagon, the defendant, Ed Riley, who was on the sidewalk opposite the wagon, called Miller to him and tried to borrow some of the whisky, offering to send to Atlanta and get whisky and return it at once. This Miller refused to do. He stepped back to his wagon and found that one of the jugs was gone. He hunted for the whisky but could not find it. With reference to the loss of the whisky, Miller testified, that he told the defendant that "part of it belonged to Bud McCoy, part to my mother, and the other to myself, and that we wanted it for Christmas. Ed stood there in front of me talking for some time. I was standing with my back to the wagon and my face to Ed Riley. In a short time I turned around

and looked into the wagon and found that one of our jugs, contain-- ing two gallons of whisky, was gone. I know Ed Riley did not take it, because I was looking at him all of the time and he didn't get any nearer to the wagon than six or eight feet, at any time before the whisky was taken by some other person. I didn't see Joe Garmon around there. There were a number of persons out in the street near the wagon, but I didn't know who they were." Bud McCoy testified that he was at supper when the whisky was taken. The State further proved that the defendant said to one witness at the depot, where they received the whisky, that they could not carry all of that liquor out of town, that he had to have some of it, and he proposed to this witness that if the witness would take the liquor out of the wagon he (the defendant) would engage Miller's attention from the wagon. Witness declined to do this, and Riley then said, "If I can see Big Joe he will do it." It was also in testimony that after the loss of the whisky and during the search for it, the defendant came after the marshal to go and see about the whisky that had been stolen, and, in a conversation in which Marion Miller accused Riley of being connected with the taking of their liquor, the defendant admitted that, if he could see Big Joe, he could get it. This was said after Miller accused the defendant, and in response to Miller's statement that all he wanted was for him to give it up. Another witness testified, that when he learned that Miller was accusing the defendant (who is a son of the witness's partner) he went to the defendant and told him that it would ruin his father and witness's business, and that they would "close us up." According to this witness, the defendant said, that he saw Joe Garmon take it out of the wagon and run off with it while defendant had Miller engaged in conversation, and, if defendant could see him, that he could get it. This was all of the evidence that was introduced on the part of the State.

We have referred to every detail, and while it may create a strong suspicion that the defendant may be in some way connected with the theft, the evidence, when taken into consideration with other errors assigned, is not so conclusive as to demand the verdict. There being absolutely no proof that the defendant himself took the whisky, it devolved upon the State to so connect him with the transaction and so attach him to the principal as to show the defendant's guilt. There being in misdemeanor cases no distinc-

tion between principals and accessories, this defendant could be convicted if evidence was adduced showing him to be either. The theory of the State's case seems to have been that the defendant, as principal in the second degree, in pursuance of a previous agreement, engaged the attention of the prosecutor while Joe Garmon stole the whisky. And as we remarked above, this inference can be drawn from the testimony for the State. But can it be inferred from the facts legally proved in the evidence? There was no direct evidence as to who took the whisky, none that there was any understanding between this defendant and his codefendant, Joe Garmon; no evidence that the particular two-gallon jug which was taken belonged (as alleged in the indictment) to Marion Miller. There had been no division of the four gallons, and the evidence did not disclose that either of the jugs had been selected by Marion Miller as his own or had any marks by which he could distinguish one from the other; the whisky had been purchased jointly; and while legal custody will authorize a prosecution for larceny of property by its custodian, the evidence showed that all the whisky (as joint property) was in the custody of McCoy and Miller, and not of Miller alone as alleged. The evidence was wholly circumstantial, and yet the jury were not instructed with reference to circumstantial evidence.

Furthermore, the statements attributed to this defendant were at best but incriminatory admissions, and the court should not have charged upon the law of confessions. A *confession* is a voluntary admission of guilt of a criminal offense. An admission, as applied to criminal cases, is the avowal or acknowledgment of a fact or of circumstances from which guilt *may* be inferred, and only *tending* to prove the offense charged, but not amounting to a confession of guilt. There is a broad distinction between mere admissions of inculpatory facts and confessions of guilt. "When a person only admits certain facts from which the jury may or may not infer guilt, there is no confession." And according to the rule in *Dumas* v. *State*, 63 *Ga.* 600, where a prisoner did not confess his guilt, but only admitted his presence at the scene of the crime, the court ought not to instruct the jury as though he had made a confession of guilt. *Covington* v. *State*, 79 *Ga.* 687. "To constitute a declaration a confession, within the legal meaning of the term, it must amount to a confession of the crime charged, or

participation in such commission, as distinguished from admissions or other statements tending to prove guilt or innocence; or of facts from which, taken together, guilt is deducible." In *Fletcher* v. *State,* 90 *Ga.* 468, Chief Justice Bleckley says: "There is a very wide distinction between admitting the main fact and admitting some minor or subordinate fact or series of facts which could be true whether the main fact existed or not. This distinction has been pointed out at least twice by this court, and frequently by other courts." And this ruling has been steadfastly adhered to ever since in this State. See *Lee* v. *State,* 102 *Ga.* 221. Under these rulings the learned trial judge erred in charging the jury upon the subject of confessions at all.

But if the law on the subject of confessions were applicable, the evidence in this case which tends to connect the defendant with the theft is entirely circumstantial. Confessions of guilt, if they be of facts directly admitting the admission of the crime charged, are direct evidence, but if the facts confessed be only matter from which an inference of participation arises, they are circumstantial only. *Eberhart* v. *State,* 47 *Ga.* 599. So that, if the admissions of the defendant are to be treated as a confession, it is error, manifestly harmful to the defendant, to submit to the jury evidence wholly circumstantial (as was all the evidence in this case, which tended to show the guilt of this defendant), without instructing them that if any other inference could be reached, from these circumstances, than that of guilt, the defendant must be acquitted. Circumstantial evidence is worth nothing in a criminal case, if the circumstances are reasonably consistent with the hypothesis of innocence, as well as the hypothesis of guilt. A reading of the evidence is convincing that, from the circumstances proved, an inference of innocence is as easily drawn as that the defendant is guilty. The jury should have been given the lamp provided by section 984 of the Penal Code, to guide their feet in journeying through the testimony in search of a legal verdict.

*Judgment reversed.*