### A03A0366. PENNYMON v. THE STATE.
(582 SE2d 582)

MIKELL, Judge.

James Edward Pennymon, Jr., was convicted of voluntary manslaughter, aggravated battery, two counts of aggravated assault, and three counts of possession of a firearm during the commission of a crime, all arising out of a shooting incident at a party on Christmas Day, 1999. The trial court sentenced him to a total of 75 years to serve. Pennymon appeals from the order denying his motion for new trial, asserting that the trial court erred in (1) denying his motion to suppress his custodial statements, (2) denying his motion to suppress identification testimony, (3) refusing to grant a mistrial after the state improperly placed his character into evidence, (4) admitting

---

[6] *Coleman v. State*, 256 Ga. 77, 78 (1) (343 SE2d 695) (1986).

[7] *Anderson v. State*, 194 Ga. App. 395 (390 SE2d 637) (1990).

[8] Id.

[9] See *Zellmer v. State*, 257 Ga. App. 346, 347 (1) (571 SE2d 174) (2002); *Young v. State*, 254 Ga. App. 262, 264 (2) (562 SE2d 231) (2002).

autopsy photographs of victim Adrian Johnson into evidence, (5) refusing to merge the aggravated assault with the aggravated battery as to victim Earnest Roberts, (6) ordering the sentences on the firearm offenses to run consecutively, and (7) refusing to grant a new trial based on the insufficiency of the evidence. We affirm.

1. Pennymon first enumerates as error the admission of his custodial statements into evidence. "The burden is on the prosecution to show the voluntariness of a custodial statement by a preponderance of the evidence. Factual and credibility determinations of this sort made by a trial judge after a voluntariness hearing must be accepted by appellate courts unless such determinations are clearly erroneous."[1] Pennymon argues that during an unrecorded interview, Detective Andrew Dodson of the Perry Police Department promised him lenient treatment in exchange for his statement that the shooting was a mistake or accident. However, Detective Dodson testified at the *Jackson-Denno* hearing that at the conclusion of the first, videotaped interview, Pennymon asked to speak with him alone. According to Detective Dodson, Pennymon "knew that he was in a lot of trouble and he wanted to know . . . what he could do to possibly help himself." Detective Dodson testified that he advised Pennymon to tell the truth and made no offer of leniency. Pennymon then left the interrogation room and called his girlfriend. The interrogation resumed, and Pennymon admitted culpability in the shooting. Detective Dodson testified that he never told Pennymon that the murder charge could be reduced to manslaughter, that he informed Pennymon of his *Miranda* rights prior to interrogating him, and that Pennymon never invoked his rights. Based on Detective Dodson's testimony, we find no error in the trial court's denial of Pennymon's motion to suppress his custodial statements.

2. After the trial court denied Pennymon's motion to suppress his statements, defense counsel and the state apparently agreed upon a redacted version that would be introduced into evidence at trial. However, the state inadvertently introduced the unredacted videotape, on which Pennymon admitted that he had been smoking marijuana that night and that he had "started rolling a blunt" after he returned to his car. The prosecutor stopped the tape upon realizing his error and requested a recess to retrieve the correct tape. Pennymon moved for a mistrial on the ground that the state had improperly placed his character into issue. The court overruled the motion but offered to give curative instructions. Defense counsel did not respond to the court's offer, and no curative instructions were given.

"A trial court's denial of a motion for mistrial based on the

---

[1] (Citation omitted.) *Lopez v. State*, 252 Ga. App. 681, 686 (2) (557 SE2d 1) (2001).

improper admission of bad character evidence is reviewed for abuse of discretion by examining factors and circumstances, including 'the nature of the statement, the other evidence in the case, and the action taken by the court and counsel concerning the impropriety.' "[2] In the instant case, witnesses had already testified that people at the party were smoking marijuana. Therefore, the trial court ruled that Pennymon's revelation that he had smoked marijuana was not so prejudicial as to warrant a mistrial. Moreover, the record shows that the prosecutor played the wrong tape because it was labeled incorrectly and that he stopped it as soon as he realized the error. Finally, due to the overwhelming evidence presented against Pennymon, and defense counsel's failure to request curative instructions, we cannot say that the trial court abused its discretion in refusing to grant a mistrial.

3. Next, Pennymon enumerates as error the denial of his motion to suppress in-court identification testimony. Pennymon argues that Roberts's identification of him was tainted by an impermissibly suggestive photographic lineup.

> It is error to allow testimony concerning a pre-trial identification of the defendant if the identification procedure was impermissibly suggestive and, under the totality of the circumstances, the suggestiveness gave rise to a substantial likelihood of misidentification. A court need not consider whether there was a substantial likelihood of misidentification if it determines that the identification procedure was not impermissibly suggestive. An identification procedure is impermissibly suggestive when it leads the witness to an "all but inevitable identification" of the defendant as the perpetrator or . . . is the equivalent of the authorities telling the witness, "This is our suspect."[3]

At a pretrial hearing, Detective Leon Roberts testified that the photographic lineup displayed to Earnest Roberts depicted individuals within the same age range, physical build, hairstyle, and skin tone. Within a minute of viewing the lineup, Earnest Roberts pointed to Pennymon's photograph and identified him as the shooter. The court reviewed the photographic lineup and found nothing suggestive. At trial, Detective Roberts testified that Earnest Roberts had identified Pennymon at a photographic lineup, and the lineup was admitted

---

[2] (Citation omitted.) *White v. State*, 268 Ga. 28, 32 (4) (486 SE2d 338) (1997) (reference to defendant's purported need for cocaine did not warrant a mistrial where statement was unintentional and the evidence of guilt was overwhelming).

[3] (Citations omitted.) *Miller v. State*, 270 Ga. 741, 743 (2) (512 SE2d 272) (1999).

over objection. Although Roberts described the shooter at trial, he never actually identified Pennymon.

Pennymon argues on appeal that because Earnest Roberts did not testify at the pretrial hearing, the state failed to ·establish the factors essential to a determination of whether substantial likelihood of misidentification existed. But Pennymon never raised this objection in the trial court. Rather, he contended that the lineup was impermissibly suggestive because Pennymon was the youngest man in the lineup. The trial court viewed the photographic lineup and found nothing suggestive, considering general age range and facial features. Having found that the identification procedure was not impermissibly suggestive, the court was not required to consider whether a substantial likelihood of misidentification existed.[4] Moreover, because the lineup has not been included in the record on appeal, we must assume that the trial court's factual determination is correct and that the court did not err in denying the motion to suppress.

4. Pennymon next assigns error to the admission of photographs of Johnson's autopsy, three taken pre-incision and one taken post-incision. Pennymon contends on appeal that the photographs were irrelevant and unduly prejudicial. However, this objection was not properly preserved for appellate review.

At trial, prior to the medical examiner's testimony, the state indicated that it intended to introduce a post-incision photograph into evidence to show the manner of death. Defense counsel objected, stating, "Of course, we would object to that being used, Your Honor. It was my understanding that . . . the only photographs that were going to be used would be two pre-incision photographs." The court ruled the post-incision photograph admissible because the medical examiner deemed it essential to explain the nature and extent of the victim's injury. At no time did defense counsel argue that any of the photographs were irrelevant or unduly prejudicial.

> In order to preserve a ground for error, the objecting party must state the specific ground upon which the objection is based. A defendant must do more than merely state that he objects. A reason why evidence should not be admitted will not be considered on appeal unless the specific reason was urged below. The generalized objection made here was insufficient to notify the trial court of the legal ground so that its applicability could be measured and error avoided. The

---

[4] Id.

alleged error was not preserved, and this Court will not consider it.[5]

Even if the objection had not been waived, the post-incision photograph was relevant "to aid the medical examiner in describing the cause and manner of death."[6] Accordingly, this enumeration is meritless.

5. Pennymon argues that his convictions of aggravated assault and aggravated battery against Roberts should have been merged for sentencing purposes. "In determining whether merger occurred, the key question is whether the two offenses are proven with the same facts. Here, the two offenses were proven with different facts."[7] Count 3 of the indictment charged Pennymon with aggravated battery by seriously disfiguring Roberts's arm, and Count 4 alleged that Pennymon committed an assault upon Roberts with a firearm. Roberts testified that he became involved in a verbal confrontation with Pennymon. Pennymon then ran to his car, retrieved a gun, waved the gun around, and said, "what y'all goin do?" Someone convinced Pennymon to put the gun in his pocket. This evidence supports Pennymon's conviction of aggravated assault.

After the confrontation, Roberts testified that he turned around and walked toward the house. While he was standing near the back door, Roberts heard ten to fifteen shots fired and was struck in the arm by a bullet. His arm bone was shattered. This evidence supports Pennymon's conviction of aggravated battery, and none of the evidence offered to prove the aggravated assault was used to prove the aggravated battery. It follows that the trial court correctly ruled that the offenses did not merge.[8]

6. Pennymon contends that the trial court erred in imposing five-year consecutive sentences for each of the three firearm possession convictions. We disagree.

OCGA § 16-11-106 (b) requires the trial court to impose a five-year sentence for each firearm possession conviction and also requires that each sentence run consecutively to any other sentence received. We have construed that language to mean that a firearm possession sentence must only run consecutively to the sentence for its underlying felony

[5] (Footnotes omitted.) *Lancaster v. State*, 253 Ga. App. 224, 225 (2) (558 SE2d 772) (2002).

[6] (Punctuation omitted.) *Whitaker v. State*, 275 Ga. 521, 522 (2) (570 SE2d 317) (2002), citing *Peterson v. State*, 274 Ga. 165, 171 (5) (549 SE2d 387) (2001).

[7] (Footnote omitted.) *Woods v. State*, 250 Ga. App. 164, 168 (2) (550 SE2d 730) (2001).

[8] See *Grace v. State*, 262 Ga. 746, 748 (2) (425 SE2d 865) (1993); *Robinson v. State*, 246 Ga. App. 576, 584 (8) (541 SE2d 660) (2000).

conviction. The trial judge retains discretion to make separate firearm possession convictions run concurrently to each other, but is not required to exercise its discretion in that manner.[9]

In the case sub judice, the trial court ran the sentences on the weapons offenses — Counts 11, 12, and 13 — consecutively to the correct underlying felonies — Counts 1, 3, and 5. Moreover, "trial courts have been granted broad discretion to run sentences concurrently or consecutively,"[10] and we cannot say that the court abused its discretion in refusing to run the sentences for the firearm offenses concurrently with each other.[11] We summarily reject Pennymon's argument that OCGA § 16-11-106 required the trial court to run the sentences on Counts 11, 12, and 13 concurrently with the sentence on Count 4. Nothing in the Code section or cases cited herein supports this proposition.

7. Finally, Pennymon challenges the sufficiency of the evidence to support his convictions.

On appeal the evidence must be viewed in the light most favorable to support the verdict, and [Pennymon] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[12]

(a) Pennymon first alleges that his conviction of aggravated assault against Dontreal Green cannot be sustained because Green testified that he was inside the house when the shooting took place. However, the transcript shows that Green testified that he was outside when the first shot was fired, after which he ran into the house. Moreover, Green had already testified that after words were exchanged at the party, Pennymon pulled a gun out of his shirt and said, "well, I got 17 for all y'all." Green's testimony was sufficient for the jury to find Pennymon guilty beyond a reasonable doubt of aggravated assault under OCGA § 16-5-21 (a) (2).[13]

---

[9] (Footnotes omitted.) *Braithwaite v. State*, 275 Ga. 884, 888-889 (9) (572 SE2d 612) (2002).

[10] (Footnote omitted.) *Busch v. State*, 271 Ga. 591, 595 (523 SE2d 21) (1999).

[11] See *Braithwaite*, supra at 889.

[12] (Citation and punctuation omitted.) *Knapke v. State*, 236 Ga. App. 795 (513 SE2d 765) (1999).

[13] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(b) Pennymon next alleges that his convictions of aggravated battery and voluntary manslaughter cannot be sustained because the state failed to prove that he fired the weapon that caused Johnson's death and shattered Roberts's arm. However, on cross-examination, Pennymon admitted shooting his gun at the party but asserted he did so in self-defense. According to Pennymon, the unidentified man cursed at him, and Pennymon "heard a little pop." Then, Pennymon testified, he "just started shooting." Pennymon identified the nine millimeter Taurus that was admitted into evidence as the weapon he shot that night. Detective Ken Ezell testified that he recovered the Taurus from inside the house, behind the hot water heater. Former Georgia Bureau of Investigation agent Bruce Willis testified that he found a bloody, copper-jacketed projectile on the kitchen floor beside the refrigerator. Bernadette Davy, a firearms examiner at the state crime laboratory, testified that the copper-jacketed projectile was fired from the Taurus. The medical examiner testified that the projectile was consistent with the one that killed Johnson. Finally, the evidence showed that a metal jacket fragment removed from Roberts's arm was fired from the Taurus. It follows that the evidence is sufficient to support Pennymon's convictions of aggravated battery and voluntary manslaughter under the standard set forth in *Jackson v. Virginia*.[14]

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED JUNE 3, 2003.

*Jeffrey L. Grube*, for appellant.

*Kelly R. Burke, District Attorney, Amy E. Smith, Assistant District Attorney*, for appellee.