### A05A0490. PATTERSON v. THE STATE.
(613 SE2d 200)

ELLINGTON, Judge.

A Houston County jury found Benjamin Patterson guilty of felony theft by shoplifting, OCGA § 16-8-14 (a), (b) (2). Following the grant of an out-of-time appeal, Patterson appeals, contending the trial court erred in denying his motion for new trial. He challenges the sufficiency of the evidence and raises several claims of error, including ineffective assistance of trial counsel. For the following reasons, we affirm.

Viewed in the light most favorable to support the jury's verdict,[1] the record reveals the following. On December 27, 1998, three employees of a J. C. Penney in Centerville responded to a "shoplifting-in-progress" announcement and attempted to stop a woman from removing apparel from the men's department. The employees chased the woman as she ran to a nearby car, a late-model, four-door, off-white Oldsmobile. The woman ignored the employees' shouts to stop and entered the car on the passenger side. As soon as the woman got into the car, a man "came flying around" the employees, got in the driver's seat, and "immediately reversed the car and took off." One employee wrote down the car's tag number. Another employee watched the driver as he "slammed" the car into reverse and sped away. The driver backed up so quickly that he forced the employee from behind the car to the driver's side where she made eye contact with him. This employee positively identified Patterson at trial as the getaway driver.

Using the tag information obtained by the store employee, the police traced the car to its owner, a woman who loaned the car to Patterson on the day of the robbery. The woman testified that Patterson neither returned her car nor explained what happened to it. The police later found the car wrecked in Macon. When the police first tried to locate Patterson, they learned he was in a "treatment center" but they were unable to "make contact with him due to patient confidentiality." It is unclear from the record whether this was a hospital; nevertheless, the jury might infer that Patterson sought some kind of medical attention immediately after the wreck.

---

[1] *Jackson v. Virginia,* 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

When an investigator later interviewed Patterson in jail, Patterson claimed the car had been stolen from him. He could not describe the thieves, however, and he claimed he chose not to report the theft because he intended to find the car himself. Patterson insisted he had never been to the J. C. Penney in Centerville. He added that "if he was being charged with this shoplifting . . . there would be video cameras in the store to show that it was not him." Toward the end of the interview, the investigator told Patterson that he might be able to get him a reduced sentence, possibly just time served, if he cooperated. Following a hearing, the trial court suppressed those statements Patterson made after the investigator's offer.

Although the police were unable to recover the stolen clothes, employee testimony established that Patterson's accomplice took a bag full of Dockers brand shirts. An investigator testified that 30 shirts[2] were stolen. An employee familiar with the items taken testified they were priced from $48 to $52 each.

1. When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307 at 318-319 (III) (B). The jury, not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts. Id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001).

Based on the evidence adduced, including Patterson's conduct during and after the theft, the jury was authorized to find Patterson guilty beyond a reasonable doubt as a party to the crime of theft by shoplifting. See *Stewart v. State*, 243 Ga. App. 860, 861-862 (1) (534 SE2d 544) (2000); OCGA §§ 16-8-14 (a) (1) (shoplifting); 16-2-20 (b) (3) (aiding and abetting). Because the jury could infer from the evidence

---

[2] Although the court sustained Patterson's objection to any testimony the investigator might give concerning the *value* of the shirts, there was no objection posed to nor any instruction given by the court to disregard the officer's testimony concerning the *number* of shirts stolen. We are unable to ascertain from the transcript whether the investigator's testimony as to the number of shirts stolen was hearsay or otherwise lacked probative value. See *White Missionary Baptist Church v. Trustees of First Baptist Church*, 268 Ga. 668, 669 (1) (492 SE2d 661) (1997) ("Hearsay testimony is not only inadmissible but wholly without probative value, and its introduction without objection does not give it any weight or force whatever in establishing a fact.") (citation and punctuation omitted). Consequently, we must consider the investigator's testimony in determining whether any evidence supports the jury verdict.

presented that the stolen shirts had a combined value in excess of $300, a felony sentence was authorized. See *Scott v. State*, 234 Ga. App. 378, 379 (1) (506 SE2d 880) (1998) (testimony as to value from employee familiar with value of stolen items sufficient to authorize felony grade shoplifting conviction).

2. Patterson contends the trial court should have suppressed all of the statements he made to the investigator during his custodial interview, not just those made after the investigator offered him a hope of benefit, a reduced sentence.[3] He contends all his statements should be considered tainted because it was impossible to determine at what point during the interview the investigator's offer was made.

The investigator testified that prior to starting the interview, he read Patterson his *Miranda*[4] rights, made sure Patterson understood them, and had Patterson initial a waiver of rights form. He also testified that their discussion of a possible lighter sentence occurred well into the 30-minute interview, toward the end. The trial judge questioned the investigator about when the offer was made, determined which statements were made before and after the offer, and then excluded those statements that might have been tainted by any hope of benefit. The trial court accepted the investigator's chronology of the interview and found that any statements made prior to the offer were voluntary.

"The burden is on the prosecution to show the voluntariness of a custodial statement by a preponderance of the evidence. Factual and credibility determinations of this sort made by a trial judge after a voluntariness hearing must be accepted by appellate courts unless such determinations are clearly erroneous." (Citation and punctuation omitted.) *Lopez v. State*, 252 Ga. App. 681, 686 (2) (557 SE2d 1) (2001). Given the record before us, we cannot say that the trial court's findings were clearly erroneous. Consequently, the trial court did not err in refusing to suppress those statements Patterson made before the investigator offered him a hope of a reduced sentence.

3. Patterson contends the trial court erred in denying his *Batson*[5] challenge to the State's use of one of its six peremptory strikes to exclude from his petit jury the only African-American male on the panel of thirty-four potential jurors. The prosecutor explained that he

---

[3] The investigator advised Patterson that "if he would just be truthful and cooperate, we would work with him, that maybe he would just have to do a restitution and time already served."

[4] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[5] *Batson v. Kentucky*, 476 U. S. 79, 89 (II) (B) (106 SC 1712, 90 LE2d 69) (1986) ("[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant.").

struck this juror not because of race but because the juror's name was familiar and he had reason to believe the juror failed to report his criminal history, which included an arrest or conviction for theft. When the prosecutor sought to verify that the juror had a criminal history, he received information that the chief assistant district attorney had confirmed that the juror was "the same guy with this history."

Because the prosecutor offered a race-neutral reason for the peremptory strike and the trial court ruled on the ultimate question of intentional discrimination, we need address only the sufficiency of the prosecutor's explanation for the peremptory strike. *Chunn v. State*, 210 Ga. App. 209, 210 (2) (435 SE2d 728) (1993). In this case, the prosecutor offered a reason for the strike that had nothing to do with the juror's race. Further, he took action to confirm whether the information about the juror's criminal history was correct. Because no other jurors were similarly situated in that they were also suspected of or known to have a criminal history but were nevertheless seated, there was no basis to conclude that the prosecutor's explanation was pretextual. Based upon this explanation, the trial court stated: "I'm satisfied that he's given . . . a race neutral reason and a case specific reason, and I'm satisfied they have determined that this [juror] is the person [with the criminal history]."

"The trial court's factual findings must be given great deference and may be disregarded only if clearly erroneous. The factors that make up a trial court's credibility determination under *Batson* will often go beyond the mere words that accompany the record before the appellate courts." (Citations, punctuation and footnotes omitted.) *Morris v. State*, 246 Ga. App. 260, 262 (540 SE2d 244) (2000). Given the evidence before the court and the court's opportunity to gauge the prosecutor's credibility, we cannot say the trial court's ruling was clearly erroneous.

4. Patterson contends the trial court erred in refusing to give his requested charges on identification. Patterson argues that his charges were "more accurately developed or tailored to the specific facts of this case" than those given by the court. Our review of the jury charges given reveals that the trial court's instructions were substantially the same as those requested. Consequently, we find no error. *Heard v. State*, 257 Ga. App. 315, 315 (1) (573 SE2d 82) (2002) ("A trial court does not err in refusing to give a charge in the exact language requested where, as here, the charges given, in their totality, substantially and adequately covered the principles in the requested charge.") (footnote omitted).

5. Patterson argues he is entitled to a new trial because he received ineffective assistance of trial counsel. He contends his attorney failed to interview key witnesses and failed to move for a

directed verdict. To prevail on a claim of ineffective assistance of counsel, an appellant must show both that counsel's performance was deficient and that but for this deficiency, there is a reasonable probability that the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668, 687-696 (III) (104 SC 2052, 80 LE2d 674) (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694 (III) (B). Failure to satisfy either prong of the *Strickland* standard is fatal to an ineffective assistance claim. *Brewer v. State*, 224 Ga. App. 656, 657-658 (2) (481 SE2d 608) (1997). "[I]n evaluating an attorney's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (Punctuation and footnote omitted.) *Rucker v. State*, 271 Ga. 426, 427 (520 SE2d 693) (1999). "We will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial could not reliably have produced a just result." (Footnote omitted.) *Glass v. State*, 255 Ga. App. 390, 401 (10) (565 SE2d 500) (2002). "The trial court's determination with respect to effective assistance of counsel will be affirmed unless the trial court's findings are clearly erroneous." (Citation omitted.) *Chapman v. State*, 273 Ga. 348, 350 (2) (541 SE2d 634) (2001).

(a) The transcript of the motion for new trial hearing reveals that Patterson's attorney did contact the State's eyewitnesses through her investigator, but those witnesses were "less than receptive" to being interviewed. She was also aware of the witness Patterson now claims would have exonerated him, but either could not locate him or had determined he lacked helpful information. At any rate, counsel reviewed the incident statements and was, therefore, aware of what these witnesses reported seeing. Patterson offered no evidence at the motion for new trial hearing establishing how his attorney's failure to interview these witnesses prejudiced him. And he failed to proffer the testimony of the witness who could allegedly exonerate him. Pretermitting whether counsel's performance was deficient, there is nothing in the record establishing the requisite prejudice. *Sanders v. State*, 253 Ga. App. 380, 382 (559 SE2d 122) (2002) ("Absent a proffer, defendant cannot meet his burden of making an affirmative showing that specifically demonstrates how counsel's failure would have affected the outcome of his case.") (citation and punctuation omitted).

(b) Patterson's attorney did not make a motion for a directed verdict on Patterson's shoplifting charge because, based on the trial judge's comments, she expected the motion would be denied. Further, given that the evidence in this case was sufficient to survive a motion for directed verdict, counsel was not deficient for failing to make the motion. *Banks v. State*, 244 Ga. App. 191, 192 (1) (c) (535 SE2d 22)

(2000) ("Failure to pursue a meritless motion cannot be evidence of ineffective assistance.") (citation omitted). Consequently, Patterson failed to carry his burden of proving ineffective assistance of trial counsel. We find no error.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED APRIL 7, 2005.

*Jeffrey L. Grube,* for appellant.

*Kelly R. Burke, District Attorney, Katherine K. Lumsden, Assistant District Attorney,* for appellee.